149 T.C. No. 4

UNITED STATES TAX COURT

DEAN MATTHEW VIGON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28788-14L.                    Filed July 24, 2017.

P submitted to R nine Forms 1041, "U.S. Income Tax Return for Estates and Trusts"; and R assessed against P nine $5,000 penalties under I.R.C. sec. 6702 (for "frivolous tax submissions"), which are not subject to deficiency procedures and for which R asserts there is no statute of limitations. R issued to P a notice of Federal tax lien under I.R.C. sec. 6320(a), and P requested a CDP hearing, during which under I.R.C. sec. 6330(c)(2)(B) he challenged his underlying liability for the penalties. The IRS's Office of Appeals issued a determination sustaining the penalty liabilities and the notice of lien, and P filed a Tax Court petition pursuant to I.R.C. sec. 6330(d)(1). Thereafter R abated the penalties, released the lien, and filed a motion to dismiss the petition on grounds of mootness; but R did not concede P's liability for the penalties on the nine Forms 1041, and R reserved the right to reassess later I.R.C. sec. 6702 penalties for the nine Forms 1041.

Held: Despite R's abatement of the penalties and release of the lien, the CDP case is not moot, in light of P's liability challenge under I.R.C. sec. 6330(c)(2)(B) and R's non-concession as to liability and R's reserving the right to reassess the penalties.


Dean Matthew Vigon, for himself.

Scott A. Hovey, for respondent.


OPINION


GUSTAFSON, Judge: This is a collection due process ("CDP") appeal pursuant to section 6330(d),[1] in which petitioner Dean Matthew Vigon asks us to review a determination by the Office of Appeals (Appeals) of the Internal Revenue Service (IRS) to sustain the filing of a notice of Federal tax lien, with a view toward collection of $45,000 (plus interest) in penalties that the IRS assessed against Mr. Vigon pursuant to section 6702(a) for "Frivolous Tax Submissions". The Commissioner has abated the penalties, released the lien, and moved to dismiss the case on grounds of mootness; and the issue now before us is whether this case is moot, in view of the Commissioner's retaining the right to reassess the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code ("Code") of 1986 as in effect at all relevant times (codified in 26 U.S.C.).

penalties and declining to concede that Mr. Vigon is not liable. We hold that the case is not moot, and we will deny the Commissioner's motion.

Background

Mr. Vigon's Forms 1041

From June 2010 through July 2011, Mr. Vigon submitted a total of nine Forms 1041, "U.S. Income Tax Return for Estates and Trusts", on behalf of the "Dean M. Vigon Trust"--two for tax year 2007, three for tax year 2008, and four for tax year 2009. Three of the Forms 1041 (one for each year) are marked as amended returns. Three others are unsigned, incomplete photocopies of others of the nine forms, and they were sent to the IRS via telefacsimile and were not mailed.

Penalty assessments and notice of lien

The IRS treated these as nine separate returns and determined that the positions reflected on the Forms 1041 were frivolous. The IRS therefore assessed against Mr. Vigon nine $5,000 penalties for the supposed filing of nine frivolous Forms 1041. In May 2014 the Commissioner issued to Mr. Vigon a Letter 3172, "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320". The Letter 3172 stated that the Commissioner had filed a notice of Federal tax lien ("NFTL") on May 15, 2014, for the amounts of $10,075.91 for tax year 2007,

$15,110.05 for tax year 2008, and $20,110.05 for tax year 2009--i.e., for the penalties plus interest.

CDP hearing

In June 2014 the Commissioner received from Mr. Vigon a completed Form 12153, "Request for a Collection Due Process or Equivalent Hearing", by which he challenged the NFTL. During the CDP hearing Mr. Vigon disputed his liability for the penalties. On October 21, 2015, IRS Appeals issued a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 of the Internal Revenue Code", which sustained the filing of the notice of Federal tax lien. The explanatory attachment stated:

## ISSUES YOU RAISED

### Collection Alternatives Requested

No collection alternatives were specified on the Form 12153 for the lien CDP. An attachment indicated that you are a Canadian citizen born and raised and you do not owe any of these taxes, penalties, or interest. You requested that any and all past forms held by IRS bearing your name or number assigned to your name be revoked from any record, including any applications, assigned numbers (SSN, ITEN, EIN), or any returns, forms or other paperwork. No additional documentation was submitted in order to continue with a collection alternative determination.

Challenges to the Liability

You indicated a challenge to the liability for the penalties assessed for filing frivolous Form 1041 US Income Tax Returns for Estates and Trusts for the years ended 12/2007, 12/2008, and 12/2009. You informed the Settlement Officer that the returns being filed were an attempt to purchase property in the US and you were told by a man named Peter that this was what needed to be done to facilitate the purchase. The information received did not reasonably purport [sic] your request to revoke all the paperwork filed and be granted full relief or abatement of the penalties assessed.

You Raised no Other issues

Mr. Vigon timely filed a petition with the Tax Court, appealing the determination of IRS Appeals. At that time, he was a resident of Canada.

Tax Court proceedings

As the scheduled trial date approached, a motion for continuance was filed on behalf of Mr. Vigon, explaining that he was incarcerated in Canada. The Commissioner objected to the continuance but stated that "respondent believes this case is susceptible of resolution by summary judgment." The Court granted the continuance and ordered the Commissioner to file a motion for summary judgment. However, the Commissioner discovered that during the CDP hearing IRS Appeals' settlement officer "did not verify whether written managerial approval, as set forth in I.R.C. § 6751(b)(1), was obtained before the I.R.C. § 6702 penalties were assessed or whether an exception to obtaining managerial approval

otherwise applies." The Commissioner therefore moved to remand the case to IRS Appeals for a supplemental hearing, during which verification of compliance with section 6751(b)(1) would be obtained. The Court granted the Commissioner's motion and ordered the remand.

After the supplemental hearing, IRS Appeals issued a supplemental notice of determination, once again sustaining the filing of the notice of Federal tax lien; and the explanatory attachment to the supplemental notice stated:

> For each of the IRC § 6702 penalties assessed, an immediate supervisor of the individual making the determination to assess the penalty, approved that determination in writing. The administrative file was reviewed and verified that written approval was secured in writing, as set forth in IRC §6751(b)(1), and was obtained before the IRC § 6702 penalties were assessed.

On December 21, 2016, the Commissioner filed a motion for summary judgment. By our order of December 23, 2016, we denied the motion, identifying genuine disputes of fact about the number of returns filed and about the supervisory approval of them under section 6751(b)(1). We ordered the parties to state their availability for a trial in February 2017.

No trial has taken place. Instead, the Commissioner moved for a continuance, explaining: that the IRS would abate the penalties at issue; that the process of abating those liabilities is almost complete; that the process of releasing

the liens at issue has been initiated; and that once those processes have been completed, the IRS intends to file a motion to dismiss the case on grounds of mootness. We granted the motion for continuance on February 16, 2017, but we stated:

> We understand how collection issues under section 6330(c)(2)(A) become moot if collection activity ceases. It is less clear how a liability challenge under section 6330(c)(2)(B) becomes moot merely upon an announced concession, which would not seem to have any res judicata or collateral estoppel effect. Perhaps a CDP petitioner who makes a liability challenge that the IRS concedes is entitled to decision in his favor on the liability issues. * * *

We therefore ordered that, if the Commissioner files a motion to dismiss on grounds of mootness, "then the IRS shall explain how such a motion gives adequate relief to the petitioner."

The Commissioner's motion to dismiss

The Commissioner then filed a motion to dismiss the case on grounds of mootness on March 24, 2017 (which he supplemented on April 18, 2017). The motion stated that "the frivolous return penalties for taxable years 2007, 2008 and 2009 have all been abated and the federal tax liens for all three years have been released." (Emphasis added.) That is, the Commissioner does not allege merely that the notice of lien has been "withdrawn", the effect of which would be that the relevant Code provisions are "applied as if the withdrawn notice had not been

filed", <u>see</u> sec. 6323(j)(1) (emphasis added), but states that the liens themselves

"have been released", <u>see</u> sec. 6325, which would seem to mean "the lien referred

to in such certificate [i.e., the NFTL] is extinguished", <u>see</u> sec. 6323(j)(1); <u>see</u>

<u>Drilling v. Commissioner</u>, T.C. Memo. 2016-103, at *45-*46.  However, the filing

by which this ostensible release was made states:

> With respect to each assessment below, unless notice of lien is refiled
> by the date in column(e) [i.e., dates in 2021 and 2022], this notice
> shall constitute the certificate of release of lien as defined in
> IRC 6325(a).

Thus, the purported "release" indicates that release will occur (if at all) at a date

years away and that there may be a refiling of an NFTL.

Moreover, the Commissioner's motion does not state that the IRS concedes

that Mr. Vigon is not liable for the penalties.  Rather, the motion states (emphasis

added):

> 15.    Respondent agrees with the Court that a dismissal on the
> grounds of mootness would not have any res judicata or collateral
> estoppel effect.  While respondent notes that there is no statute of
> limitations in the Internal Revenue Code for section 6702 penalties
> * * *, it is respondent's general practice to process 6702 penalties
> within three years after a frivolous submission.  <u>If respondent decides</u>
> <u>to assess a penalty</u> outside of this time period, he is directed to seek
> review of counsel.  Id.

> 16.    Since an order of dismissal would not have res judicata
> effect, <u>respondent could hypothetically seek to reassess a 6702</u>
> <u>penalty against petitioner</u>.  If this occurred, however, petitioner would

be entitled to a new CDP hearing concerning the new assessment. * * *

17.  * * * Since <u>petitioner will have an opportunity to seek judicial review of any further collection action if this were to occur,</u> petitioner's interest are adequately protected notwithstanding the lack of res judicata or collateral estoppel effect of an order dismissing this case on grounds of mootness. The fact remains that there is no current case or controversy for the Court to adjudicate.

Thus, the Commissioner explicitly declines to concede that Mr. Vigon is not liable for the penalties. To the same effect, the Commissioner states in a supplement to his motion that "respondent may in theory reassess those penalties" and elaborates:

[I]t is not clear whether respondent will reassess. Respondent's personnel would have to review the returns again and if they are judged to satisfy the requirement of section 6702 and more than three years have passed since they were received, respondent's personnel would be required to obtain an opinion of Counsel prior to assessment.

That is, the Commissioner expressly reserves his right to reassess the same penalties and to force Mr. Vigon to go through the CDP process again if he wants to obtain judicial review of his liability. But the Commissioner asserts that the case is moot nonetheless.

Mr. Vigon, apparently still incarcerated, has not filed a response to the motion to dismiss on grounds of mootness.

Discussion

I. General legal principles

A. Section 6702 penalties

Section 6702 imposes a $5,000 penalty for "Frivolous Tax Submissions". This is one of the "Assessable Penalties" of subtitle F, chapter 68, subchapter B of the Code, which are to be "paid upon notice and demand", sec. 6671(a), and are not subject to deficiency procedures, see sec. 6703(b). Because we are not yet called on to adjudicate Mr. Vigon's liabilities under section 6702, we do not now discuss further the principles and standards for applying this penalty.

B. "Collection due process"

1. NFTL and Letter 3172

At issue here is the IRS's determination to sustain the filing of a notice of Federal tax lien for Mr. Vigon's section 6702 penalty liabilities, notwithstanding his challenge to those liabilities. Section 6320(a) and (b) provides that, no more than five business days after the IRS files an NFTL, the IRS must notify the taxpayer of the filing and of the taxpayer's right to a CDP hearing before the IRS Office of Appeals. Thus, the Letter 3172 giving notice of the NFTL is the trigger or occasion for a CDP hearing. However, the scope of the hearing is broader than the lien per se.

### 2. Issues in the CDP hearing

Pursuant to section 6330(c)(2),[2] titled "Issues at hearing", the taxpayer may raise two kinds of issues, the first of which is "any relevant issue relating to the unpaid tax" or the lien. Sec. 6330(c)(2)(A). Such "relevant issue[s]" specifically include:

- "appropriate spousal defenses" (i.e., under section 6015);

- "the appropriateness of collection actions" (here, the lien); and

- "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Sec. 6330(c)(2)(A).

Mr. Vigon raised none of this kind of issue.

The second kind of issues that the taxpayer may raise is "challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability". Sec. 6330(c)(2)(B). The section 6702 penalties at issue here are not determined in a statutory notice of

---

[2]Section 6330 is the provision as to CDP hearings for notices of proposed levy, but it also governs CDP hearings as to liens by the operation of section 6320(c), which provides: "For purposes of this section, subsections (c), (d) (other than paragraph (2)(B) thereof), (e), and (g) of section 6330 shall apply." After the petition in this case was filed, section 6330(d)(2)(B) was designated section 6330(d)(3)(B).

deficiency issued pursuant to section 6212, and the IRS acknowledges that Mr. Vigon was entitled to challenge the penalty liabilities at the CDP hearing.

The agency-level process concludes with IRS Appeals' issuance of a "determination".  Sec. 6330(c)(3).  In issuing that determination, the Appeals officer must consider the two kinds of issues outlined in section 6330(c)(2)(A) and (B), must verify that the requirements of applicable law and administrative procedure have been met, and must consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person [involved] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).  IRS Appeals' "determination" resolving those issues, id., is reflected in a document (called a "Notice of Determination") that IRS Appeals issues to the taxpayer.

### 3.    Tax Court jurisdiction

Section 6330(d)(1) defines the Tax Court's jurisdiction to review such a determination:

> (1) Judicial review of determination.--The person may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

That is, it is not the NFTL that a taxpayer may appeal but rather IRS Appeals' "determination" made under section 6330(c)(3). And when he does, the Tax Court acquires jurisdiction not simply over the lien but over "such matter". See First Rock Baptist Church Child Dev. Ctr. v. Commissioner, 148 T.C. ___, ___ (slip op. at 14) (May 18, 2017).

"[O]nce a petitioner invokes the jurisdiction of the Court, jurisdiction lies with the Court and remains unimpaired until the Court has decided the controversy." Naftel v. Commissioner, 85 T.C. 527, 530 (1985) (citing Dorl v. Commissioner, 57 T.C. 720, 722 (1972), aff'd, 507 F.2d 406 (2d Cir. 1974));[3] see also Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1208 (9th Cir. 2005) ("[A]s a general matter a federal court's subject-matter jurisdiction is determined at the time it is invoked"), aff'g, 121 T.C. 89 (2003).

---

[3]When we grant a taxpayer's motion to dismiss a CDP case, see Wagner v. Commissioner, 118 T.C. 330 (2002), we do so not for a supposed lack of jurisdiction, and not as a matter of the taxpayer's right, but only after giving the Commissioner an opportunity to oppose the motion and show any prejudice that granting the motion might cause. Thus, the change in the taxpayer's position does not affect our jurisdiction in a CDP case. In Dorl v. Commissioner, 57 T.C. 720, 722 (1972) (a deficiency case), aff'd, 507 F.2d 406 (2d Cir. 1974), we stated that "a taxpayer may not unilaterally oust the Tax Court from jurisdiction which, once invoked, remains unimpaired until it decides the controversy." It is equally true that the Commissioner "may not unilaterally oust the Tax Court from jurisdiction"--neither in a deficiency case nor in a CDP case.

4. <u>Mootness</u>

Even where we have jurisdiction, a case might become moot and, if so, it should be dismissed. "Ordinarily, once the Commissioner concedes that there is no unpaid liability for a disputed year upon which a collection action could be based, a proceeding filed in this Court pursuant to section 6330 is moot." <u>MacDonald v. Commissioner</u>, T.C. Memo. 2009-240, slip op. at 5 (citing <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. 1 (2006),[4] <u>Gerakios v. Commissioner</u>, T.C. Memo. 2004-203, and <u>Chocallo v. Commissioner</u>, T.C. Memo. 2004-152). However, as we noted above, a CDP hearing may involve not only collection issues, such as "the appropriateness of collection actions" (like the notice of lien at issue here) and "offers of collection alternatives", sec. 6330(c)(2)(A), but also "challenges to the existence or amount of the underlying tax liability", sec. 6330(c)(2)(B). If a CDP hearing includes a valid liability challenge, then "[t]o the extent respondent contends that withdrawal of the NFTL by itself moots the entire case, we reject that contention." <u>First Rock Baptist Church Child Dev.</u>

---

[4]Unlike this case, <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. 1 (2006), involved a liability that had been satisfied (not merely abated, as here), and the Commissioner had represented that there would be no further collection action (rather than reserving the possibility of future collection, as here), leaving only the question (not present here, and not present in <u>Greene-Thapedi</u> when the petition was first filed) whether the taxpayer should get a refund--a question, already then pending in District Court, as to which we held the Tax Court lacked jurisdiction.

Ctr. v. Commissioner, 148 T.C. at ___ (slip op. at 14). The liability issue may remain even after the collection issues have been resolved or become moot.

The question now before us is whether the liability issue may remain even after the assessment has been abated.

II.    Analysis

A.    Jurisdiction

The Commissioner contends that we lack jurisdiction over Mr. Vigon's liability challenge because the IRS has released the lien underlying the petition. We disagree.

Admittedly, unless a taxpayer has received from the IRS a collection notice (i.e., a notice of the filing of Federal tax lien or a notice of a proposed levy), has requested a CDP hearing before IRS Appeals, and has received from IRS Appeals a notice of determination, then the taxpayer has no basis for filing a CDP petition in the Tax Court pursuant to section 6330(d). From that truism, the Commissioner derives the position that if collection has ceased and the collection notice has become moot, then the basis for maintaining the suit has evaporated, and the Court loses jurisdiction. He insists that "section 6330(d)(1) * * * does not constitute a specific grant of jurisdiction to conclusively determine petitioner's liability irrespective of the collection action."

The Commissioner lays great stress on the (valid) distinction between a liability on the one hand and, on the other, the "separate concept" of "its assessment and collection", which separate concept is, in the Commissioner's view, the necessary subject of a CDP hearing. The Commissioner argues:

> In order for the Court to determine a liability in a CDP case notwithstanding the lack of a proposed collection action, the Court must find a specific jurisdictional grant under I.R.C. § 6330. However, section 6330(d)(1) only gives the Tax Court jurisdiction to review the determination referred to in section 6330(c)(3). Section 6330(c) (3) directs Appeals to determine, inter alia, whether the ["]proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Without an assessment, there can be no collection action and accordingly no valid determination for the Tax Court to review under section 6330(d)(1). This does not constitute a specific grant of jurisdiction to conclusively determine petitioner's liability irrespective of the collection action.

This argument reflects an imprecise reading of the statute. Section 6330(d)(1), providing for appeal to the Tax Court, does grant the right to appeal a "determination", which, as the Commissioner notes, is a determination under section 6330(c)(3). However, the "inter alia" in the Commissioner's quotation is quite apt; and section 6330(c)(3)--not in fact confined to the balancing of collection issues--actually reads as follows (emphasis added):

> (3) Basis for the determination.--The determination by an appeals officer under this subsection shall take into consideration--

(A) the verification presented under paragraph (1);

(B) the issues raised under paragraph (2); and

(C) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

"[P]aragraph (2)" includes--

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period * * *.  [Sec. 6330(c)(2)(B).]

Thus, in a case in which a liability challenge is duly raised, IRS Appeals' "determination" is clearly required to "take into consideration" that liability issue.

Tax Court jurisdiction does depend on a notice of determination (issued pursuant to section 6330(c)(3)) for which the prior collection notice (a notice of proposed levy under section 6330(a) or, as here, a notice of lien under section 6320(a)) is indeed "a necessary predicate".  Buffano v. Commissioner, T.C. Memo. 2007-32, slip op. at 6-7.  But the Tax Court's jurisdiction is not restricted to the collection notice.  Rather, that jurisdiction extends to every issue properly within the CDP hearing.  Section 6330(d)(1) allows a taxpayer to "appeal such determination to the Tax Court" (emphasis added)--i.e., to appeal to the Tax Court IRS Appeals' notice of determination, which may include a rejection of a

liability challenge--and the statute goes on to provide that "the Tax Court shall have jurisdiction with respect to such matter." (Emphasis added.) Our jurisdiction is not limited to the notice of lien that triggered this collection proceeding but rather comprehends all the issues that Congress allowed to be included in "such matter". Having obtained jurisdiction of a liability challenge when the petition was filed, the Tax Court does not lose jurisdiction over it if the IRS releases a lien and ceases collection.

### B. Mootness

Even if we have jurisdiction over a matter, we should dismiss it if it has become moot, as a fair number of CDP cases do become. We turn now to the issue of mootness.

#### 1. Typical cases dismissed on grounds of mootness

In CDP cases involving no liability challenge but only collection issues, the full payment of the liability makes further collection unnecessary and does render the case moot. Where there is a liability challenge in a typical CDP case involving income tax, by the time we address the case, enough time has elapsed since the filing of the tax return at issue that the statute of limitations would bar any future assessment of tax (or any suit to collect the tax without assessment), see sec. 6501(a); consequently, the Commissioner's abatement of the existing

assessment constitutes his surrender as to that liability. (And in our experience, a motion to dismiss on grounds of mootness that is based on the Commissioner's abatement of an income tax assessment also usually states in some fashion that the Commissioner concedes the liability that he has abated.) In that typical circumstance, the petitioner's liability challenge has indeed become moot. The Commissioner has abated the liability; the statute of limitations would bar any future attempt to reassess or collect the liability; and the Commissioner explicitly disclaims any intention to pursue collection of that liability. We dismiss such a case on grounds of mootness.

### 2. The distinctive circumstances of this case

The Commissioner asserts, however, that the section 6702 penalty for "Frivolous Tax Submissions", unlike the income tax, cf. sec. 6501(a), has no statute of limitations in the Code. For purposes of the Commissioner's motion to dismiss, we so assume. The Commissioner has abated the previous penalty assessments against Mr. Vigon; but, as the Commissioner observes, if this case is dismissed, the IRS claims the right to reassess against and collect from Mr. Vigon identical section 6702 penalties for the same nine alleged frivolous submissions. Here, abatement is a tactical retreat but not a surrender.

Moreover, the Commissioner does not concede the liability issue[5] and does not disclaim his intention to exercise his right to reassess the penalties. He calls that right "hypothetical[]" and "theor[etical]", and he describes the decisions that would need to be made and the actions that would have to occur within the IRS before such a reassessment could be made--evidently with the intention of persuading us that reassessment is unlikely--but he stops short of disclaiming an intention to reassess the penalties. He could easily state that he will not do it, but he does not so state. Instead, he reserves the right, and he would have us dismiss this case and leave the threat hanging over Mr. Vigon--evidently forever.

The Commissioner urges that this does not leave Mr. Vigon without a remedy, because (the Commissioner volunteers) Mr. Vigon would be entitled to a new CDP hearing, with judicial review, if the IRS assessed the penalties and proceeded to collect them. We assume this is true,[6] but we see in the

---

[5]We are unable to reconcile the Commissioner's position in this case with Chief Counsel's advice in "Subject: Collection Due Process Cases", IRS CCN CC-2003-016, 2003 WL 24016801 (May 29, 2003) ("A motion to dismiss for mootness is inappropriate if petitioner is disputing the existence or amount of the liability"); and in his motion and supplement the Commissioner did not offer a reconciliation.

[6]Section 6330(b)(2) provides that a taxpayer "shall be entitled to only one hearing * * * with respect to the taxable period to which the unpaid tax * * * relates". (Emphasis added.) The section 6702 penalty pertains not to a "period"

(continued...)

Commissioner's position no reason that he could not do it again--abate the second set of assessments, moot the second CDP case, and lie in wait. Mr. Vigon's supposed remedy depends on his recognizing the second lien notice, timely requesting a CDP hearing before IRS Appeals, challenging the liability in that hearing, and then timely filing a Tax Court suit when IRS Appeals issues an adverse determination--all while he is incarcerated. Our CDP jurisdiction is littered with the sad tales of taxpayers who, even when not in prison, stumble on one or more of those requirements. But if Mr. Vigon did succeed in putting his reassessed liabilities before this Court in a future, second CDP case, the Commissioner has, in his view, the unilateral power to render the second case moot by abating the penalties, while retaining the prospect of reassessing yet again at any future time.

---

[6](...continued)
but to a "submission"; but the Commissioner takes the reasonable position that a reassessed section 6702 penalty would be a new assessment and a new liability, so that if a new collection notice is issued, the taxpayer would be entitled to a new CDP hearing. As we understand his position, the Commissioner acknowledges that in the new CDP hearing the taxpayer could make a liability challenge under section 6330(c)(2)(B), since the taxpayer would have had no prior "opportunity" for such a challenge as to the newly assessed liability.

3.    Applicable principles

By our order of March 28, 2017, we ordered the Commissioner--

to supplement his motion to address and distinguish the following holding from a tax refund suit, Hotel Conquistador, Inc. v. United States, 597 F.2d 1348, 1355 (Ct. Cl. 1979):

> [I]n midst of briefing of the summary judgment motion, defendant filed checks totaling $41,609.12 with our clerk, together with a motion to dismiss. The motion asserted that defendant had tendered refund of the full amount due, with interest; therefore, there was no money claim before the court; therefore, by the doctrine of United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), we lacked jurisdiction.  By order dated October 2, 1978, we held that we had jurisdiction, citing Church of Scientology of Hawaii v. United States, 485 F.2d 313 (9th Cir. 1973), that Testan did not apply, but that plaintiff's expectation of a res judicata or collateral estoppel effect from the anticipated decision was not a sufficient reason for trying a case when no money was at stake.  We ordered suspension.  By order of October 26, 1978, however, we lifted the suspension, plaintiff having pointed out that by I.R.C. sec. 7405, if plaintiff took the check, defendant could sue in a U.S. District Court for recovery of a refund erroneously paid.  Defendant later denied it had any such strategy in mind, and we are sure it did not. However, we believe a party who has sued the United States in this court in a tax case is entitled to a trial or, as here, a decision on dispositive motion, in this forum, unless the United States is willing to have judgment entered against it.

We hypothesize that the reasoning of Hotel Conquistador is applicable in this CDP case (because a full refund there is arguably like release of the liens here, and the possibility of an (unanticipated) erroneous refund suit there is arguably like the possibility of an

(unanticipated)[7] reassessment here). * * * If we are correct, then the appropriate motion in the circumstances respondent alleges would be for entry of decision not sustaining the collection on the ground that there is no liability.

In response to our order, the Commissioner argues[8] that the reasoning of Hotel Conquistador should not defeat a holding of mootness here. The Commissioner asserts that "Hotel Conquistador did not discuss [the] applicable standard for deciding to proceed with the case notwithstanding the government's proffer to refund the taxes paid". Hotel Conquistador relied upon the decision of the U.S. Court of Appeals for the Ninth Circuit in Church of Scientology of Hawaii v. United States, 485 F.2d 313, 315-316 (9th Cir. 1973), which held (citing United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)) that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case". Rather, "[f]or a defendant to successfully establish mootness by reason of its voluntary cessation of the controversial conduct, the defendant must show that

---

[7]Our order referred to reassessment of the section 6702 penalties as "unanticipated" here, but that characterization is evidently incorrect, since the Commissioner's supplement to his motion goes only so far as to say that "it is not clear whether respondent will reassess".

[8]The Commissioner also argues that Hotel Conquistador does not apply because, after the lien was released and the penalties were abated, we lack jurisdiction over the liability challenge. We have addressed jurisdiction in part II.A above.

'(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" <u>True the Vote, Inc. v. IRS</u>, 831 F.3d 551, 561 (D.C. Cir. 2016) (quoting <u>Qassim v. Bush</u>, 466 F.3d 1073, 1075 (D.C. Cir. 2006)).

The Commissioner fails as to both of these prongs. As to "no reasonable expectation", he might succeed in making such a showing by asserting unequivocally in his motion that he will not reassess the penalties, and we assume that the burden would then be on Mr. Vigon to counter that showing with some evidence or indication that the penalty would be reassessed. But the Commissioner fails to make that initial showing. The defect is not simply that he fails to persuade us that in fact he will not really reassess; rather, he does not even <u>assert</u> that he will not reassess. He asserts instead that "it is not clear whether respondent will reassess". He evidently feels it is his prerogative to shut down the lawsuit while deliberately leaving the matter in solution. The caselaw does not at all vindicate that prerogative.

As to the second prong--"interim relief or events have completely and irrevocably eradicated the effects of the alleged violation"--the Commissioner contends that "abatement of the section 6702 penalty assessments has 'eradicated the effects of the alleged violation'". Omitting as it does the word "irrevocably"

from its quotation of this prong, his milder statement is more nearly defensible; but the thing he must actually show is that the abatement has "irrevocably eradicated" the effects of his penalty liability determination. In fact, his abatement of the section 6702 penalty is thoroughly revocable in his view, since he claims the power to assess once again the very same penalties on the very same submissions.

"[T]here is a difference between the controversy having gone away, and simply being in a restive stage." True the Vote, 831 F.3d at 561. The Commissioner could have made this controversy about Mr. Vigon's penalty liabilities go away; instead, he has chosen to leave it in a restive stage. It is therefore not moot.

## Conclusion

In view of the Commissioner's non-concession of the liability issue, this case is not moot, and his motion to dismiss on grounds of mootness will be denied.

An appropriate order will be issued.